IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERIC ORLANDO REESE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:16cv261-WKW |
| | ) | [WO] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Eric Orlando Reese's ("Reese") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody.  Doc. # 1.[1]  For the reasons that follow, the court concludes that Reese's § 2255 motion should be denied without an evidentiary hearing and that this action be dismissed with prejudice.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## I.   INTRODUCTION

In February 2013, a jury found Reese guilty of conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846 & 841(a)(1), and three counts of aiding and abetting the use of a communication facility (a cell phone) to facilitate the conspiracy, in violation of 21 U.S.C. § 843(b) & 18 U.S.C. § 2.  After a

---

[1] Unless otherwise indicated, references to "Doc(s). #" are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of Court.  Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

sentencing hearing on June 4, 2013, the district court sentenced Reese to 240 months in prison on the conspiracy count and to 12 months in prison on each count of aiding and abetting the use of a communication facility, all counts to run concurrently.[2]  Doc. # 7-18 at 1–2.

Reese appealed, arguing that the district court erred by (1) granting the Government's "reverse *Batson*[3] challenge"; (2) allowing cooperating Government witness William Ford to testify about the meaning of certain terms, used in a conversation between Reese and codefendant Willie Davis, as pertaining to drug dealing; and (3) applying guideline enhancements to Reese's sentence based on facts not found by the jury.  *See* Doc. # 7-19.

On June 1, 2015, the Eleventh Circuit issued an opinion affirming Reese's convictions and sentence.  *United States v. Reese*, 611 F. App'x 961 (11th Cir. 2015); Doc. # 7-20.  Reese filed a petition for writ of certiorari in the United States Supreme Court, which that court denied on December 14, 2015.

On March 30, 2016, Reese, acting *pro se*, filed this § 2255 motion asserting the following claims:

1.  His counsel rendered ineffective assistance by failing to investigate and challenge the use of his prior Alabama drug conviction to enhance his sentence under 21 U.S.C. § 841(b)(1)(B) because the prior conviction did not qualify as a "felony drug offense" under 21 U.S.C. § 802(44).

---

[2] On September 27, 2016, the district court granted Reese's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2), applying a two-level reduction to Reese's offense level based on Amendment 782 to the Sentencing Guidelines and reducing Reese's 240-month sentence to 193 months.  Case No. 2:12cr87-WKW (Doc. # 839).

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986).

2. His counsel rendered ineffective assistance by failing to move for a severance of his trial from that of his codefendants.

3. His counsel rendered ineffective assistance by failing to request a limiting instruction regarding consideration of firearms found during searches of his codefendants' residences, and by failing to argue at sentencing and on appeal that a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1) should not be applied to him.

4. His counsel rendered ineffective assistance by failing to investigate whether it was his voice on recorded phone calls of drug transactions with codefendant Davis, and by failing to present arguments and evidence that he was not involved in the phone calls.

5. His counsel rendered ineffective assistance at sentencing by failing to request a two-level reduction to his offense level based on Amendment 782 to the Sentencing Guidelines.

6. His counsel rendered ineffective assistance at sentencing and on appeal by failing to argue he should receive a minor-role reduction under U.S.S.G. § 3B1.2(b).

7. His counsel rendered ineffective assistance at sentencing and on appeal by failing to argue that under *Alleyne v. United States*, 570 U.S. 99 (2013), the amount of cocaine attributed to him as relevant conduct had to be submitted to the jury and found by the jury beyond a reasonable doubt.

8. His counsel rendered ineffective assistance by failing to argue on appeal that he was not part of the drug conspiracy but instead was merely in a buyer-seller relationship with codefendant Davis.

Doc. # 1 at 2–12.

On August 28, 2016, Reese amended his § 2255 motion to add claims that (1) under *Mathis v. United States*, 136 S. Ct. 2243 (2016), his prior Alabama drug convictions used to enhance his sentence were obtained under a statute that is indivisible and defines a controlled substance offense more broadly than the generic definition of the offense; and

(2) the district court erred in holding him accountable for five-and-a-half kilograms of cocaine when the jury only found him guilty of conspiracy to possess with intent to distribute 500 grams of cocaine.  Doc. # 13; *see also* Doc. # 17 at 2.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish . . . that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

### 1.   *Failure to Investigate and Challenge Prior Drug Conviction*

Reese contends that his counsel[4] was ineffective for failing to investigate and challenge the use of his prior Alabama drug conviction to enhance his sentence under 21 U.S.C. § 841(b)(1)(B). Doc. # 1 at 4–5. He argues that under *Descamps v. United States*, 570 U.S. 254 (2013), the prior conviction did not qualify as a "felony drug offense" as that term is defined by 21 U.S.C. § 802(44). *Id.* at 4–5 & 12. He then argues that his counsel's mistaken belief that the prior conviction could be used to enhance his sentence led his counsel to urge him to accept a plea agreement of 240 months in prison instead of seeking a plea deal for 120 months. *Id.* at 4–5.

---

[4] Attorney Aimee C. Smith represented Reese at trial and on direct appeal.

In December 2012, the Government filed a notice of information under § 851 indicating its intent to rely on Reese's 1992 Alabama conviction for sale of a controlled substance and his 2004 Alabama conviction for possession of a controlled substance as prior felony drug convictions to seek an enhanced sentence for Reese of life in prison.[5] Doc. # 7-2.  Because Count 1 of the indictment charged Reese with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine (Doc. # 7-1 at 1–2), having two prior convictions for felony drug offenses would have qualified Reese for a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) if he were to be convicted as charged in Count 1.[6]  The jury returned a verdict on Count 1 finding Reese guilty of conspiracy to possess with intent to distribute 500 grams or more of cocaine—a lesser offense and lesser amount than the "5 kilograms or more" charged in the indictment.  Doc. # 7-17 at 7.  Upon Reese's conviction of the lesser offense, having any prior conviction for a felony drug offense subjected Reese to a sentence of from 10 years to life imprisonment under 21 U.S.C. § 841(b)(1)(B).[7]

---

[5] For the Government to enhance a defendant's sentence based on prior convictions, it must "file[ ] an information with the court . . . stating in writing the previous convictions to be relied upon."  21 U.S.C. § 851(a)(1).

[6] Section 841(b)(1)(A) provides, "If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release[.]"

[7] Section § 841(b)(1)(B) provides, "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment[.]"

Reese does not specify which of his prior Alabama drug convictions did not qualify as a "felony drug offense" to enhance his sentence under § 841(b)(1)(B).  That is of no consequence, however, because both of the prior convictions were qualifying felony drug offenses, and either could have been used to enhance Reese's sentence.[8]

"Felony drug offense" is defined at 21 U.S.C. § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."  Under § 802(44), if a state drug offense is punishable by more than one year in prison, whether or not the actual sentence exceeds one year, it qualifies as a "felony drug offense" for purposes of § 841(b)(1)(B).  *See Burgess v. United States*, 553 U.S. 124, 127 (2008) (holding that the definition of "felony drug offense" under § 802(44) is a term of art that includes all drug offenses punishable by more than one year of imprisonment); *see also, e.g., Means v. Adduci*, 2016 WL 4059708, at *5 (N.D. Ala.), *report and recommendation adopted*, 2016 WL 4011726 (N.D. Ala. 2016).

Reese's presentence investigation report ("PSI") reflects that his 1992 Alabama drug conviction was for the sale of marijuana, for which he was sentenced to 10 years in prison, split to serve 18 months in boot camp and five years on probation.[9]  Doc. # 9-1 at

---

[8] For a § 841(b)(1)(B) enhancement, a single prior conviction for a felony drug offense suffices.  *See* 21 U.S.C. § 841(b)(1)(B).  Thus, if either, or both, of Reese's prior Alabama drug convictions was a qualifying felony drug offense, Reese was subject to enhancement under § 841(b)(1)(B).

[9] The PSI does not specify under which Alabama statute this conviction was obtained.

9.    Reese's PSI reflects that his 2004 Alabama drug conviction was for possession/receiving in excess of 28 grams of cocaine, in violation of § 13A-12-231(21), Ala. Code 1975.  Doc. # 9-1 at 12.  For that conviction, an offense considered to be "trafficking,"[10]  Reese was sentenced to 15 years in prison.  *Id.*  Based on the nature of the convictions and the sentences imposed, it is evident that Reese's 1992 and 2004 Alabama drug convictions were felony drug offenses.

Reese argues that courts must apply *Descamps v. United States*, 570 U.S. 254 (2013), to ascertain whether a prior drug conviction is a felony drug offense that may be used for a sentence enhancement under § 841(b)(1)(B).  He suggests that the Alabama controlled substance statutes under which he was convicted are broader than the "felony drug offense" defined in § 802(44), and that because (he says) these Alabama statutes are "indivisible" under the meaning of *Descamps*, his Alabama drug convictions do not qualify as felony drug offenses usable for § 841(b)(1)(B) enhancement.  Doc. # 1 at 4; *see also* Doc. # 13 at 2.  In *Descamps*, the Supreme Court held that sentencing courts may not apply a "modified categorical approach" to determine if a prior crime of conviction is a "violent felony" under the Armed Career Criminal Act ("ACCA") when the crime of conviction has "a single, indivisible set of elements."  570 U.S. at 258.  *Descamps* holds that a "categorical approach" must be applied in determining if a prior conviction under an indivisible statute is a violent felony under the ACCA.  *Id.*  Reese argues that because the Alabama statutes under which he was convicted are (in his view) indivisible, a categorical

---

[10] *See* § 13A-12-231(21), Ala. Code 1975.

approach must be applied to determine if his Alabama drug convictions are felony drug offenses that may be used for § 841(b)(1)(B) enhancement.  If the categorical approach is applied to Reese's Alabama drug convictions, each of the means of committing an offense under the Alabama statutes at issue—including the most innocent conduct that may be penalized under the statutes—must satisfy the definition of "felony drug offense" in § 802(44).

Reese's argument fails for several reasons.  First, it cannot be determined from the record, including Reese's own allegations in his § 2255 motion, which statute Reese's 1992 Alabama drug conviction was obtained under.  Thus, Reese does not meet his burden of proving that his 1992 conviction was not a felony drug offense within the meaning of § 802(44).  Further, Reese fails to show that either the statute underlying his 1992 Alabama conviction or the statute underlying his 2004 Alabama conviction—§ 13A-12-231(21), Ala. Code 1975—is indivisible and therefore subject to a categorical analysis.  Nor does Reese demonstrate that, even under a categorical analysis, there exists a means of violating the Alabama statutes underlying his 1992 and 2004 convictions that would fall outside the definition of felony drug offense in § 802(44).  Finally, and perhaps most importantly, *Descamps*—and its holding requiring the use of the categorical approach with indivisible statutes—is not applicable to Reese's case because *Descamps* considered whether the modified categorical approach could be used to determine if a prior conviction was a predicate violent felony under the ACCA.  Reese's sentence was enhanced under § 841(b)(1)(B), not the ACCA.  *Descamps* does not apply to determine the usability of a prior drug conviction for enhancement under § 841(b)(1)(B).  *See Mitchell v. United States*,

123 F. Supp. 3d 1351, 1355 (M.D. Fla. 2015) (rejecting *Descamps* as a basis for determining whether a prior conviction is a felony drug offense under § 802(44)). "The definition of 'felony drug offense' as set forth under 21 U.S.C. § 802(44), and not the ACCA, controls enhancing a sentence under § 841." *Dimanche v. United States*, 2010 WL 2265652, at * 3–4 (M.D. Fla. 2010). *See also Dowe v. United States*, 2016 WL 6963061, at *4 (M.D. Fla. 2016) (rejecting use of *Descamps* analysis to determine if prior drug conviction is a felony drug offense under § 802(44) for use in § 841 enhancement). Reese's prior Alabama convictions for the sale of marijuana (1992) and possession/receiving in excess of 28 grams of cocaine (2004) were both punishable by over one year in prison, and both convictions involved controlled substances congruent to those listed in § 802(44). Those facts qualified the convictions as felony drug offenses usable for § 841(b)(1)(B) enhancement.

In arguing for relief under *Descamps*, Reese cursorily asserts that his Alabama drug offenses lacked a mens rea element regarding the illegality of the controlled substances involved and therefore "did not match the federal definition of a controlled substance offense." Doc. # 1 at 4. However, "'[n]o element of mens rea with respect to the illicit nature of the controlled substance is expressed or implied by' § 802(44)'s definition of 'felony drug offense.'" *Devero v. United States*, 2017 WL 2840670, at *5 (M.D. Fla. 2017) (citation omitted). Further, to the extent Reese, here and elsewhere in his pleadings, appears to argue that his Alabama drug conviction had to be the equivalent of some generic federal drug crime, as opposed to meeting the § 802(44) definition of felony drug offense, such an argument lacks merit. As stated by the district court in *Devero*:

11

"The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States *or of a State or foreign country* that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44) (emphasis added). The words "or of a State or foreign country" make clear that a prior drug conviction need not be the equivalent of a felony under the federal Controlled Substances Act to qualify as a "felony drug offense." It is sufficient if an offense (1) is punishable by imprisonment for more than one year, (2) under any State law, (3) that regulates conduct relating to narcotics, marijuana, anabolic steroids, depressants, or stimulants.

2017 WL 2840670, at *5. "[D]etermining whether a prior conviction qualifies as a 'felony drug offense' under 21 U.S.C. § 841(b)(1)(B) does not require that the crime match the generic definition of some other offense. Section 802(44) supplies the definition of the term 'felony drug offense,' and it includes any drug crime that state law makes punishable by imprisonment for more than one year." *Id.* at *6; *see Burgess*, 553 U.S. at 129–35 (holding that § 802(44) provides the exclusive definition of a "felony drug offense").

Reese fails to show that either of his prior Alabama drug convictions was not a felony drug offense as defined by § 802(44). As such, an argument by Reese's counsel that the prior convictions did not qualify as felony drug offenses would have been meritless. For this reason, Reese fails to show that his counsel was ineffective for failing to investigate and challenge the use of either of his prior Alabama drug convictions to enhance his sentence under § 841(b)(1)(B).

In his amendment to his § 2255 motion, Reese argues that under *Mathis v. United States*, 136 S. Ct. 2243 (2016), his prior Alabama drug convictions used to enhance his sentence under § 841(b)(1)(B) were obtained under a statute, § 13A-12-231, Ala. Code 1975, that is indivisible and defines a controlled substance offense more broadly than the

generic definition of the offense.  Doc. # 13 at 2; *see also* Doc. # 17 at 2.  *Mathis*, which was decided in June 2016, was essentially a clarification of *Descamps*, with the Supreme Court reaffirming use of the categorical analysis and explaining the circumstances in which a criminal statute is deemed divisible and subject to a modified categorical analysis.  *See United States v. Gundy*, 842 F.3d 1156, 1161–62 (11th Cir. 2016).  Reese's citation to and reliance on *Mathis* is merely a reiteration of his *Descamps*-based claim in his original motion.  As discussed above, Reese's *Descamps*-based claim challenging his counsel's failure to challenge the enhancement of his sentence under § 841(b)(1)(B) lacks merit.  For the same reasons, Reese's challenge to the enhancement of his sentence under § 841(b)(1)(B) based on *Mathis* also lacks merit and entitles him to no relief.

Now the court turns to Reese's contention that his counsel's allegedly mistaken belief that his prior Alabama drug convictions could be used to enhance his sentence led his counsel to urge him to accept a plea agreement of 240 months in prison instead of seeking a plea deal for 120 months (Doc. # 1 at 4–5), a claim which entitles Reese to no relief.  As discussed above, both of Reese's prior Alabama drug convictions were felony drug offenses that could be used for sentence enhancement under § 841(b)(1)(B).  Therefore, counsel's belief about Reese's sentencing exposure was correct, not mistaken.  Had Reese been convicted of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, the two prior convictions for felony drug offenses would have resulted in a mandatory life sentence.  In any event, Reese did not follow counsel's alleged advice to plead guilty and accept a plea agreement of 240 months.  He went to trial, was convicted of conspiracy to possess with intent to distribute *500 grams or more* of cocaine, and

13

received a sentence of 240 months, which was near the middle of his calculated guideline range. Reese presents absolutely no evidence that the Government was willing to offer him a plea deal for 120 months, and his former counsel has submitted an affidavit indicating that no such plea deal was ever discussed or offered.[11] Doc. # 6 at 2. Reese demonstrates no deficient performance by his counsel and, further, demonstrates no prejudice resulting from counsel's advice or actions.

For the reasons discussed above, Reese is entitled to no relief on this claim of ineffective assistance of counsel.

### 2. Failure to Move for Severance

Reese says his trial counsel rendered ineffective assistance by failing to move for a severance of his trial from that of his codefendants. Doc. # 1 at 7–9. He maintains that his joint trial with his codefendants enabled the Government to present unduly prejudicial evidence of unlawful acts by his codefendants in which he was not involved. *Id.*

As a general rule, defendants who are jointly indicted should be tried together. *United States v. Morales*, 868 F.2d 1562, 1571 (11th Cir. 1989); *United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976). This is particularly true in conspiracy cases, where

---

[11] In her affidavit addressing Reese's claim, his former counsel avers:

> [A]s to a plea agreement, Mr. Reese chose not to provide any information to the government about his and others' criminal activities which would have been the springboard if not the prerequisite to pursuit of any plea bargain. He simply showed no interest in pursuit of a plea bargain. He wanted to take his case to trial. Further, it is not clear how he thinks he would have wound up with a sentence of 10 years under his circumstances. The case began as a mandatory life category range. I feel he was lucky to have taken the case to trial and end up with a 240 month sentence.

Doc. # 6 at 2.

charges against multiple defendants may be proven with substantially the same evidence. *United States v. Dorsey*, 819 F.2d 1055, 1058 (11th Cir. 1987). Severance is only justified when a defendant can show prejudice from which the trial court cannot provide adequate protection. *Dorsey*, 819 F.2d at 1058; *Morrow*, 537 F.2d at 136. The fact that a defendant may suffer some prejudice is not enough to justify severance, as a degree of prejudice is inherent in joint trials. *United States v. Harris*, 908 F.2d 728, 736 (11th Cir. 1990). Defendants' allegations of prejudice must be balanced against the interest of judicial economy and concomitant policy favoring joint trials in conspiracy cases. *United States v. Kopituk*, 690 F.2d 1289, 1318 (11th Cir. 1982).

Prejudice is not established simply because a defendant claims to be a minor figure and argues that much of the evidence at trial may apply only to codefendants. *See United States v. Smith*, 918 F.2d 1501, 1509–10 (11th Cir. 1990). A defendant does not suffer compelling prejudice even if much of the evidence actually produced at trial applies only to codefendants. *Id.*; *United States v. Casamayor*, 837 F.2d 1509, 1511 (11th Cir. 1988). The possible prejudicial effects of such disparity can be significantly alleviated if the trial court instructs the jury it must consider the evidence against each defendant on a separate and independent basis. *United v. Pritchett*, 908 F.2d 816, 822 (11th Cir. 1990).

Here, Reese's assertions about the Government's presentation of evidence of unlawful acts by his codefendants in which he was not involved do not establish compelling prejudice sufficient to justify severance. Nor does Reese demonstrate a degree of prejudice sufficient to outweigh the interest of judicial economy and the policy favoring joint trials in conspiracy cases. *Kopituk*, 690 F.2d at 1318. Reese demonstrates no reasonable

15

likelihood that a motion for severance of his trial from that of his codefendants would have succeeded.  Further, the district court instructed the jury that it must consider the evidence against each defendant on a separate and independent basis, alleviating the possible prejudicial effects of the presentation of evidence of unlawful acts by Reese's codefendants in which Reese was not involved.  *Pritchett*, 908 F.2d at 822.  *See* Doc. # 7-14 at 41.

Reese does not demonstrate deficient performance in his trial counsel's failure to move to sever his trial from that of his codefendants, and he fails also to demonstrate any resulting prejudice.  He is entitled to no relief on this claim.

### 3.  *Firearms and Failure to Request Limiting Instruction*

In an issue related to his severance claim, Reese claims his counsel was ineffective for failing to request a limiting instruction at trial regarding consideration of the firearms found during searches of his codefendants' residences.  Doc. # 1 at 8–9.  He then says his counsel was ineffective for failing to argue at sentencing and on appeal that a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1)[12] should not have been applied to him. *Id*. at 9.

Responding to this claim, the Government observes that Reese neither proposes a limiting instruction regarding the firearms that should have been given by the district court nor points to any law that would support giving a specific limiting instruction regarding the firearms.  *See* Doc. # 7 at 73.  Moreover, as noted above in the discussion of Reese's

---

[12] Section 2D1.1(b)(1) of the Sentencing Guidelines provides that a defendant's offense level should be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed" in the offense. U.S.S.G. § 2D1.1(b)(1).

severance claim, the district court instructed jurors to consider the evidence against each defendant on a separate and independent basis, alleviating the possible prejudicial effects of the presentation of evidence of codefendant acts in which Reese may not have been involved.  Evidence of the firearms was relevant to the conspiracy as a whole.   Reese played a part in that conspiracy even if he did not directly possess the firearms.  Finally, Reese does not demonstrate that presentation of evidence regarding the firearms was unduly prejudicial to his defense.  For these reasons, Reese does not carry his burden of showing that his counsel was ineffective for failing to request a limiting instruction regarding the firearms.

As for Reese's claim that his counsel was ineffective for failing to argue at sentencing that a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1) should not have been applied to him, the record reflects that Reese's counsel thoroughly objected and argued at sentencing that the enhancement should not apply to Reese because there was no connection between Reese and the seized firearms.  *See* Doc. # 9-1 at 22; Doc. # 7-17 at 4–10.  However, counsel was unsuccessful in convincing the district court not to apply the firearm enhancement.  Doc. # 7-17 at 55.  Reese's assertion that his counsel failed to argue against the firearm enhancement at sentencing is factually baseless and entitles him to no relief.

Although Reese's counsel did not pursue the firearm enhancement issue on appeal, Reese does not show he would have prevailed on this claim had it been pursued.  In overruling the objection to the firearm enhancement at sentencing, the district court explained:

17

First, the gun enhancement, I'm going to overrule the gun enhancement objection because of the tightness of this defendant, Mr. Reese, with Mr. [Willie] Davis [a kingpin in the conspiracy] and with his own brother, Mr. James Reese.

The weapons were—clearly the nexus for the weapons, all five of them, is strong.  And there's no probability that's been proven by the defendant that there was not a strong nexus.

So the question becomes foreseeability, and that's the only one that's been argued.  And foreseeability, with the tightness of these defendants, knowing it's a drug conspiracy, knowing—in furtherance of the drug conspiracy to protect your product, to protect your territory, protect your interests, protect against robbery, intimidate, and all of the other factors that courts are aware of and there's been some testimony today—that it is reasonably foreseeable, even from April the 28th, if that were the first date [on which Reese joined the conspiracy].  I'm not certain that was—I don't think that was the first date.

The problem is I don't know when the first date was.  I know when—there's no dispute that it couldn't—on the evidence that it couldn't have been before he got out of prison.  At any rate, even with the short period of time, dealing with this level of a dealer and with his brother involved, firearms were clearly—would have been foreseeable.  So I overrule that objection.

Doc. # 7-17 at 55.

Reese demonstrates no abuse of discretion in the district court's determination there was a nexus between the firearms and the conspiracy and that the involvement of the firearms in the conspiracy was reasonably foreseeable to Reese.  Thus, Reese does not show that it was professionally unreasonable for his counsel to eschew this issue on appeal or that he was prejudiced by his counsel's decision in this regard.  For these reasons, Reese is entitled to no relief on his claim that his counsel was ineffective for failing to pursue the firearm enhancement issue on appeal.

### 4.   *Phone Calls Involving Drug Transactions*

Reese claims his counsel rendered ineffective assistance by failing to investigate whether it was his voice on recorded phone calls involving drug transactions with codefendant Willie Davis, as identified at trial by William Ford, and by failing to present arguments and evidence that he was not involved in the phone calls.  Doc. # 1 at 5–7 & 12. In this regard, Reese contends his counsel should have presented a defense that it was not his voice on the phone calls; moved for a judgment of acquittal based on the Government's failure to prove it was him on the phone calls; obtained expert testimony that the voice on the phone calls was not his; obtained phone records that could have shown he was not involved in the calls; called Davis to testify that it was not Reese on the recorded calls; and moved in limine to exclude the phone calls from evidence.  *Id*.

At trial, William Ford, a cooperating Government witness who knew many of the coconspirators in the case, testified about several recorded cell phone conversations between Reese and Davis, whose voices Ford identified on the intercepted calls.  *See* Doc. # 7-10 at 59–66; Doc. # 7-11 at 9–28.  Ford, who had dealt drugs for 13 or 14 years, was familiar with code words used in the drug-dealing business and testified about the meaning of the phone conversations between Reese and Davis, explaining to the jury how those conversations involved the coded discussion of drug transactions involving Davis's sale of cocaine to Reese for resale.[13]  Doc. # 7-11 at 9–28.

---

[13] Ford identified three recorded phone calls between Reese and Davis taking place on April 24, 2012; one call between Reese and Davis taking place on April 27, 2012; one call between Reese and Davis taking place on April 28, 2012; one call between Reese and Davis taking place on April 30, 2012; and three calls between Reese on Davis taking place on April 30, 2012, testifying that all the calls involved Reese buying cocaine from Davis.  Doc. # 7-11 at 9–20; Doc. # 7-12 at 7.

In an affidavit addressing Reese's ineffective-assistance claim, Reese's former counsel states:

> Mr. Reese complains that I "was ineffective for failing to present an expert phone and voice expert [analyst] in the trial to investigate and show that it was not [him] on the phone."  I did not have sufficient information to think that any such effort would benefit Mr. Reese.  The Government had several witnesses available to identify Mr. Reese's voice.  We argued it was not Mr. Reese on the phone.  The jury did not believe this argument.

Doc. # 6 at 2.

Reese's allegations notwithstanding, the record reflects that his counsel made an oral motion for judgment of acquittal in which she argued that the Government failed to present sufficient proof that Reese was the person identified on the phone calls introduced as evidence against him.  *See* Doc. # 7-13 at 13; Doc. # 7-14 at 2.  Counsel specifically argued that the only person to identify Reese on the phone calls was William Ford and that Ford's testimony was uncorroborated despite the fact that the Government had other witnesses who could have identified Reese on the calls if it were in fact Reese.  Doc. # 7-13 at 13.  Indeed, counsel argued throughout the proceedings that the Government had not demonstrated it was Reese's voice on the phone calls.  In a response to the Government's pretrial motion in limine on the admissibility of wiretap recordings and transcripts, counsel represented that Reese would not stipulate to the identities of the speakers on the recorded phone calls.  *See* Doc. # 7-5.  In her opening statement to the jury, counsel argued there would be no evidence presented to link Reese to the conspiracy, including phone calls.  Doc. # 7-6 at 18–19.  And in her closing argument, counsel argued that the Government failed to present sufficient evidence to establish that Reese was one of the parties on the

phone calls attributed to him.  Doc. # 7-14 at 22–23.  In view of counsel's extensive presentation of arguments and motion for acquittal based on grounds that the Government did not demonstrate it was Reese's voice on the phone calls, Reese falls short of demonstrating that counsel's performance in these matters was professionally unreasonable.  This is particularly so where counsel knew the Government had several witnesses besides Ford available to identify Reese's voice on the calls.

Reese maintains that his counsel should have obtained expert testimony that the voice on the phone calls was not his.  Doc. # 1 at 6.  However, he fails to demonstrate that any expert witness obtained by the defense would have testified to this effect.  He merely speculates that such an expert would have provided favorable testimony.  This fails to satisfy *Strickland*'s prejudice prong and will not sustain a claim of ineffective assistance of counsel.  *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) ("Such speculation, however, is insufficient to establish prejudice."); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (speculating on what expert would say is not enough to establish prejudice); *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998) (petitioner's failure to identify an expert whose testimony would have altered the outcome of his trial was fatal to his habeas claim that counsel was ineffective for failing to request assistance of defense expert).

Reese says his counsel should have obtained his phone records and those of Willie Davis because they could have established that he and Davis had not talked on the phone on the dates and times reflected in the intercepted calls.  Doc. # 1 at 6–7.  Again, after having investigated the case and knowing that the Government had several witnesses who could identify Reese's voice on the calls, counsel could have reasonably believed

investigation in this direction would have been unfruitful.  Moreover, Reese presents no evidence that his and Davis's phone records would have (as he merely asserts) established that he and Davis had not talked on the phone on the dates and times reflected in the intercepted calls.  As the Government also observes:

> Testimony at trial demonstrated that many of  the conspirators in this case had phones in the names of other individuals than themselves, and that it was not unusual for people involved in drug trafficking to have their phones in other people's names.  Therefore, the phone records of Davis and Reese, even if they did not reflect that Davis and Reese talked on the days and during the times reflected in the intercepted calls, might not prove anything.

Doc. # 7 at 65.  Reese demonstrates no prejudice resulting from his counsel's failure to obtain Reese and Davis's phone records.

Reese claims that if his counsel had called Davis to testify, Davis would have confirmed that it was not Reese on the recorded phone calls.  Doc. # 1 at 12.  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  Reese presents no evidence—in the form of actual testimony or affidavits from Davis—establishing what Davis's trial testimony would have been regarding the recorded phone calls.  He does not demonstrate that Davis, if called, would indeed have testified on his behalf, would have presented testimony of the sort he suggests, and would have been credible.  Consequently, Reese has not demonstrated he was prejudiced by his counsel's failure to call Davis to testify.

Finally, Reese says his counsel should have moved in limine to exclude the phone calls from evidence. Doc. # 1 at 7. However, he presents no argument providing the basis for exclusion of the phone calls. Consequently, he demonstrates neither deficient performance by counsel nor resulting prejudice.

For the reasons indicated above, Reese is entitled to no relief on his claim that his counsel was ineffective for failing to investigate whether it was his voice on the recorded phone calls and for failing to present arguments and evidence that he was not involved in the phone calls.

### 5. *Failure to Request Two-Level Reduction Under Amendment 782*

Reese claims his counsel was ineffective at sentencing for failing to request a two-level reduction to his offense level based on Amendment 782 to the Sentencing Guidelines. Doc. # 1 at 9–10.

Amendment 782 to the Sentencing Guidelines, which reduced by two levels most of the base offense levels in the Drug Quantity Tables at U.S.S.G. §§ 2D1.1 and 2D1.11, became effective on November 1, 2014. *See* U.S.S.G. app. C, amend. 782 (2014); *United States v. Harris,* 727 F. App'x 610, 612 (11th Cir. 2018). Reese's sentencing took place on June 4, 2013. His counsel could not have anticipated the enactment of Amendment 782 when he was sentenced, and so counsel did not perform deficiently by failing to request a sentence reduction based on Amendment 782. *See, e.g., United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (an attorney's failure to anticipate a change in the law does not constitute ineffective assistance of counsel).

Amendment 782 applies retroactively.  *United States v. Maiello*, 805 F.3d 992, 994 (11th Cir. 2015).  The appropriate avenue for relief based on Amendment 782 is to file a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2).[14]  *See, e.g., Hardin v. United States*, 2015 WL 1419173, at *4 (S.D. Ga. 2015).  Reese did that on February 26, 2016.  Case No. 2:12cr87-WKW (Doc. # 828).  On September 27, 2016, the district court granted Reese's motion for a sentence reduction under § 3582(c)(2), applying a two-level reduction to his offense level based on Amendment 782 and reducing his 240-month sentence to 193 months.  Case No. 2:12cr87-WKW (Doc. # 839).  Reese's present ineffective assistance claim entitles him to no relief, and, in any event, he has obtained relief through his motion for a sentence reduction under § 3582(c)(2).

### 6.   *Failure to Argue for Minor-Role Reduction*

Reese claims his counsel rendered ineffective assistance at sentencing and on appeal by failing to argue Reese should receive a minor-role reduction under U.S.S.G. § 3B1.2(b), based largely on the fact that the conspiracy existed before Reese entered it.  Doc. # 1 at 10–11.

Section 3B1.2(b) of the Sentencing Guidelines provides that a defendant's offense level should be decreased by two levels "[i]f the defendant was a minor participant in any criminal activity."  *See* U.S.S.G. § 3B1.2(b).  For purposes of § 3B1.2(b), a minor

---

[14] "Section 3582(c) grants district courts limited authority to modify a term of imprisonment once it has been imposed.  Pursuant to § 3582(c)(2), the court may reduce a defendant's prison term if the defendant was 'sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'  18 U.S.C. § 3582(c)(2).  Only certain amendments made retroactively applicable are eligible bases for a sentence reduction under § 3582(c)(2).  *See* U.S.S.G. § 1B1.10(a)(1), (d)."  *United States v. Hall*, 619 F. App'x 818, 819 (11th Cir. 2015) (citation omitted).

participant in the criminal activity is one who is less culpable than most other participants, but whose role could not be described as minimal.   U.S.S.G. § 3B1.2, cmnt. n.5.   In determining whether to apply the role reduction, the sentencing court should consider following non-exhaustive list of factors:

> (i)   the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)   the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)   the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)   the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmnt. n.3(C).

In *United States v. Cruickshank*, 721 F. App'x 909 (11th Cir. 2018), the Eleventh Circuit stated:

> In [*United States v.*] *De Varon*, [175 F.3d 930 (11th Cir. 1999),] we established a two-part test to determine whether a defendant qualifies for a minor-role adjustment.  *See id.* at 940.  First, "the district court must measure the defendant's role against the relevant conduct for which [he] has been held accountable."   *Id.* at 945.  "When the relevant conduct attributed to a defendant [at sentencing] is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable."  *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006).  Second, "the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in [the] relevant conduct."  *De Varon*, 175 F.3d at 945.

> To conduct this inquiry, we've held that "the conduct of participants in any larger criminal conspiracy is irrelevant." *De Varon*, 175 F.3d at 944. Rather, the district court should (1) look to "other participants only to the extent that they are identifiable or discernable from the evidence," and (2) "consider only those participants who were involved in the relevant conduct attributed to the defendant." *Id.* We've advised that "[a] defendant is not automatically entitled to a minor role adjustment merely because [he] was somewhat less culpable than the other discernable participants." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1320–21 (11th Cir. 2010) (emphasis omitted). Additionally, we have warned that "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none [of the participants] are minor or minimal participants." *De Varon*, 175 F.3d at 944.

721 F. App'x at 911–12.

Reese fails to prove that (1) his actual conduct was any different from the relevant conduct for which he was held accountable at sentencing, or (2) he was less culpable than most other participants in the relevant conduct for which he was held accountable. *See Cruickshank*, 721 F. App'x at 911–12; *United States v. De Varon*, 175 F.3d 930, 939 & 945 (11th Cir. 1999). Even though his participation in the drug conspiracy did not last as long as that of other of his codefendants, Reese was not a minor participant. Testimony indicated that, like many of his codefendants, Reese arranged on several occasions to buy large amounts of cocaine (half kilograms) from Willie Davis for resale to others. *See* Doc. # 7-11 at 9–28. Reese made his own decisions about when to buy the cocaine from Davis, and about whom to resell the drugs to and for how much. Reese was a middle man for Davis in distributing drugs. And like most of his codefendants, Reese made large sums of money on his drug distribution. Reese fails to show he was a minor participant in the

conspiracy.  Therefore, he cannot show that his counsel was ineffective for failing to argue he should receive a minor-role reduction under § 3B1.2(b).

### 7.  *Alleyne Claim*

Reese claims his counsel rendered ineffective assistance at sentencing and on appeal by failing to argue that, under *Alleyne v. United States*, 570 U.S. 99 (2013), the amount of cocaine attributed to him had to be submitted to the jury and found by the jury beyond a reasonable doubt.  Doc. # 1 at 2–4.

At sentencing, the district court found that five-and-a-half kilograms of cocaine were attributable to Reese for sentencing purposes based on relevant conduct that was reasonably foreseeable through his participation in the conspiracy.  Doc. # 7-17 at 55–56. The court based this amount on Reese's close relationship with codefendant Willie Davis and with his own brother James and James's transportation and involvement in the conspiracy after Reese got out of jail.  *Id.* at 56.  Under the Sentencing Guidelines, the five-and-a-half kilograms of cocaine attributed to Reese resulted in a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4) (Drug Quantity Table).

In *Alleyne*, the Supreme Court held that the enhancers described in 18 U.S.C. § 924(c)(1)(A)(ii) and (iii), for brandishing or discharging a firearm, triggering higher mandatory minimum sentences, must be treated as elements of separate, aggravated offenses, to be alleged in the indictment and proved beyond a reasonable doubt.  570 U.S. at 113–17.  More broadly, the Court held that, except for prior convictions, "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" or admitted by the defendant.  *Id.* at 102.  *Alleyne* overruled *Harris v. United States*, 536 U.S.

545, 557 (2002), which had earlier held that facts found by a judge could increase the statutory mandatory minimum sentence applicable to a defendant. *Alleyne*, 570 U.S. at 102. Reese maintain that the ruling in *Alleyne* applies to him because the district court in his case engaged in factfinding at sentencing regarding the drug quantity attributable to him to increase his sentence. Doc. # 1 at 2–3.

The decision in *Alleyne* does not affect Reese, because no statutory minimum sentence for his offenses was increased based on judicial factfinding in his case. Application of a guideline provision—such as determination of the base offense level under § 2D1.1(c)(4) for the amount of drugs attributable as relevant conduct—to obtain a sentence *within* statutory maximums and minimums is an exercise of judicial discretion unaffected by *Alleyne*. The statutory maximum and minimum sentences for Reese's offenses were not increased by the district court's drug quantity determination; nor were they increased based on any other judicial factfinding. The jury's verdict finding Reese guilty of conspiracy to possess with intent to distribute 500 grams or more of cocaine authorized a sentence of from 10 years to life in prison pursuant to § 841(b)(1)(B). The district court's drug quantity determination affected only Reese's guideline range within that statutory range. Judicial factfinding that affects guidelines calculations does not fit within the category of facts required under *Alleyne* to be proved beyond a reasonable doubt. *See United States v. Charles,* 757 F.3d 1222, 1225 (11th Cir. 2014) ("Accordingly, [after *Alleyne*,] a district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—so long as its findings do not increase the

statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict.").

Because the holding in *Alleyne* was not implicated by the district court's drug quantity determination for purposes of calculating Reese's base offense level under the Sentencing Guidelines, Reese is wrong when arguing he is entitled to relief under *Alleyne*. Therefore, Reese's counsel was not ineffective for failing to raise an *Alleyne* claim at sentencing.  Counsel is not ineffective for failing to raise a meritless claim.  *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).  While Reese's counsel did raise an *Alleyne* claim on appeal, the Eleventh Circuit held that, under any standard of review, the claim entitled Reese to no relief, because the district court's enhancement of Reese's sentence based on its drug quantity determination "did not increase the statutory minimum sentence to be imposed or increase a statutory maximum for the charged offense."  *United States v. Reese*, 611 F. App'x at 965.  Reese is entitled to no relief on this claim in his § 2255 motion.

In his amendment to his § 2255 motion, Reese presents a claim that the district court erred in holding him accountable for five-and-a-half kilograms of cocaine when the jury only found him guilty of conspiracy to possess with intent to distribute 500 grams of cocaine.  Doc. # 13 at 1.  Careful consideration of Reese's argument to support this claim reveals that it is a reassertion of his *Alleyne* claim presented in his original motion.  *See* Doc. # 13 at 1; Doc. # 17 at 1.  As discussed above, Reese's *Alleyne* claim is meritless. Reese says his appellate counsel "argued *Alleyne* wrong on direct appeal."  Doc. # 17 at 1. But, for reasons already discussed, any claim under *Alleyene*, regardless of how it may have been argued by counsel on appeal, will not afford Reese any relief.

To support this claim in his amendment, Reese cites *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1339–40 (2016), and *United States v. Burnett*, 827 F.3d 1108, 1116 (D.C. Cir. 2016), decisions by the Supreme Court and the D.C. Circuit Court, respectively. Doc. # 13 at 1; Doc. # 17 at 3. Neither case is particularly germane to *Alleyene* issues. However, looking at these cases and looking again at Reese's rather cursory argument in his amendment, this court considers that, in addition to asserting a claim under *Alleyne*, Reese may also be arguing that, in determining the drug quantity attributable to Reese at sentencing, the district court erroneously included drug amounts related to the conduct of other conspirators that occurred before Reese joined the conspiracy. First, such a claim is procedurally barred from review, because Reese did not raise it on appeal and he fails to demonstrate cause for his procedural default. *See McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). Moreover, such a claim is refuted by the record, as the district court specifically excluded from its calculations the conduct of coconspirators occurring before Reese entered the conspiracy. Doc. # 7-17 at 56. The court found Reese could not be held accountable for any amount of cocaine distributed by the drug ring before April 28, 2012, the date it was first established that Reese was involved in the conspiracy. *Id*. There is no merit to Reese's claim that the district court included drug amounts related to the conduct of his coconspirators occurring before he joined the conspiracy.

### 8. Failure to Argue Buyer-Seller Relationship

Reese says his counsel rendered ineffective assistance by failing to argue on appeal that Reese was not part of the drug conspiracy, but instead was merely in a buyer-seller relationship with codefendant Willie Davis. Doc. # 1 at 7–9.

To sustain a conviction for conspiracy to distribute drugs, the Government must prove that (1) an agreement existed between two or more people to distribute the drugs; (2) the defendant knew of the conspiratorial goal; and (3) the defendant knowingly joined or participated in the illegal venture. *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014). If the evidence demonstrates that a defendant was aware of the essential nature of the charged conspiracy, he may be found guilty, even if he did not know all of its details, played only a minor role in the overall scheme, and had contact with only some of the alleged coconspirators. *Id.* at 497–98.

The elements of the conspiracy, including the existence of an agreement and the defendant's participation in it, may be proved entirely by circumstantial evidence. *United States v. White,* 663 F.3d 1207, 1214 (11th Cir. 2011). Evidence of "repeated transactions between participants buying and selling large quantities of illegal drugs . . . may be sufficient to find the participants were involved in a single conspiracy to distribute those drugs." *Reeves*, 742 F.3d at 497, citing *United States v. Brown*, 587 F.3d 1082, 1089 (11th Cir. 2009); *see also United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999) ("In the case of a purchaser of narcotics, we have held that agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser.").

"While the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement, an agreement to distribute drugs may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to a purchaser." *United States v. Thompson*, 422 F.3d 1285, 1292

(11th Cir. 2005) (internal quotations omitted). Evidence of repeated purchases of large amounts of drugs may demonstrate both "a prior or contemporaneous understanding," *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993), and a "continuing relationship," as opposed to a simple buyer-seller relationship, *Thompson,* 422 F.3d at 1292. *See United States v. Johnson*, 889 F.2d 1032, 1035 (11th Cir. 1989) (regularity of purchases of cocaine by defendant from his supplier viewed as a refutation that the evidence showed only a buyer-seller relationship).

The evidence here established a largescale conspiracy involving numerous individuals, including Reese. Before sending the case to the jury, the district court found that the Government had established by a preponderance of the evidence that the six defendants on trial shared a common purpose and plan to distribute cocaine and that they each knew the unlawful purpose of the plan and willfully joined in it. *See* Doc. # 7-13 at 7–8. The court also found that Reese distributed cocaine that he received from Davis and from Reese's brother James. *Id.* at 8. Further, the phone call evidence established a close relationship between Davis and Reese. *See* Doc. # 7-11 at 9–28. In those recorded phone calls, Davis explained to Reese how he should go about cutting his cocaine. The evidence also showed that Davis, a kingpin in the conspiracy, was willing, without question, to provide Reese with half kilograms of cocaine to resell, even though Reese had just gotten out of jail for selling cocaine. It also showed that Reese was known to the tri-county drug community, as demonstrated by William Ford's testimony. The evidence also showed that Reese's uncle, Davis, and his two brothers, James Reese and Tony Gardner, were involved in selling cocaine for Davis. This evidence established that Reese was part of the

conspiracy and not merely an unaffiliated buyer of cocaine from Davis.   Reese demonstrates no reasonable likelihood that his counsel could have successfully argued on appeal that he was not a participant in the conspiracy but instead was merely in a buyer-seller relationship with Davis.

Further, presenting a buyer-seller argument on appeal would have required counsel to admit that Reese was buying drugs from Davis, an argument wholly inconsistent with the defense presented at trial, which was that Reese was not involved in drug dealing at all and that the Government had not proved he was.   In light of the defense presented at trial, it was not professionally unreasonable for counsel to forego what would have amounted to an entirely new defense on appeal.   Further, because the buyer-seller argument was not raised at trial, it would only have been reviewed on appeal for plain error.   Therefore, even had counsel raised the argument on appeal, Reese demonstrates no reasonable likelihood that plain error could be shown.

Given the evident weakness of such a defense, Reese can establish no prejudice resulting from counsel's failure to raise an argument on appeal that Reese was in a mere buyer-seller relationship with Davis.   Reese is not entitled to relief on this claim of ineffective assistance of counsel.

### III.   CONCLUSION

Accordingly, for the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Reese be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before November 29, 2018.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

Done this 15th day of November, 2018.

     /s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE